IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| DIANE MARIE MAST,  :  <br> SPOUSE OF EDWARD JOHN MAST and  : <br> EXECUTRIX OF HIS ESTATE,  : <br> Plaintiff,  : <br>  : <br> v.  : <br>  : <br> LAFAYETTE COLLEGE et al.,  : <br> Defendants.  : | CIVIL ACTION <br><br> No. 13-4161 |

**MCHUGH, J.**                                                                                                            **JANUARY 30, 2015**

**MEMORANDUM**

**Introduction**

This is a *pro se* action brought by plaintiff Dianne Mast many years after her husband's sudden and tragic death while playing in an informal basketball game on the campus of Lafayette College, where their son was a member of the football team. Though I am sympathetic to the grief Mrs. Mast continues to feel long after her husband's death, she does not have a claim under federal civil rights laws, and even if she did, the claim would be untimely. Accordingly, I am obligated to dismiss this action with prejudice.

**I.    Summary of the Facts**

In her amended complaint, Plaintiff alleges that her husband, Edward Mast, was playing a basketball game in a gymnasium at Lafayette College on October 18, 1994 when he suffered a cardiac arrhythmia. Mr. Mast was not a student or employee, but apparently had permission to use the gym for recreational purposes. Someone at the scene called 911. According to Plaintiff, that call necessarily would have been routed through Lafayette's Public Safety Office because

1

the office was a 911 answering point.  Therefore, she contends, the Public Safety Officers would have been aware of the emergency, but they were slow to respond and only arrived after local police.  An ambulance transported Mr. Mast to a hospital, but he was pronounced deceased at 8:45 p.m.  Plaintiff alleges that the Public Safety Officers' delay and the lack of portable defibrillators in the gymnasium caused or contributed to Mr. Mast's death.[1]

Though Mr. Mast passed away in 1994, Plaintiff alleges that new information about the incident has recently come to light.  The original Coroner's report attributed the cause of death to "cardiac dysrhythmia due to a hypertrophic cardiomyopathy."  Autopsy Report attached to original Complaint.  But in 2013, after a cardiologist examined the health of her son's heart, Plaintiff's personal cardiologist reviewed Mr. Mast's autopsy report and concluded that Mr. Mast did not have a defective gene that led to the heart attack.  Plaintiff argues that this is new information demonstrating that her husband could have been saved by faster emergency response in 1994.

## II.   Procedural History

Plaintiff filed this lawsuit in July of 2013.  The original complaint alleged Defendants violated the Clery Act, 20 U.S.C. § 1092, which pertains to campus safety.  Defendants filed a motion to dismiss in which they argued, in part, that the Clery Act contains no private cause of action, and therefore Plaintiff had not raised a federal question that would allow this court to take jurisdiction.  Plaintiff responded by filing a First Amended Complaint.  The new complaint alleges federal question jurisdiction based on 42 U.S.C. § 1983.  It is not entirely clear what substantive federal rights Plaintiff claims were violated for the purposes of the 42 U.S.C. § 1983 claim.  It is also unclear whether Plaintiff is alleging supplemental state law claims.

---

[1] Although not a basis for my decision, I note that the Incident Report attached to Plaintiff's Amended Complaint reflects that, in addition to Plaintiff's son, a Lafayette coach was performing CPR on Mr. Mast.

2

Defendants have filed a new motion to dismiss the First Amended Complaint.

### III. Standard of Review

Defendants' Motion to Dismiss the Amended Complaint makes several arguments: 1) Plaintiff has failed to allege that Defendants acted "under color of state law" as required by 42 U.S.C. § 1983; 2) Plaintiff has failed to allege that Defendants deprived her of any particular substantive federal rights, alleging only negligence, which is not actionable under § 1983; and 3) Plaintiff's claims are barred by the relevant statute of limitations.

Courts must only grant a motion to dismiss when, after separating factual allegations from legal conclusions and accepting all the plaintiff's factual allegations as true, the complaint fails to state a plausible claim for relief. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Courts must be more lenient towards pleadings filed by *pro se* plaintiffs. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007); *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("a *pro se* complaint must be held to less stringent standards than formal pleadings drafted by lawyers") (citations omitted); *Higgs v. Atty. Gen. of the U.S.*, 655 F.3d 333, 339 (3d Cir. 2011) ("The obligation to liberally construe a *pro se* litigant's pleadings is well-established."). However, substantive laws are the same for represented and *pro se* plaintiffs, and *pro se* plaintiffs must ultimately satisfy the same burdens of proof. *See Hatcher v. Potter*, 2005 WL 3348864 at *1 n.1 (E.D. Pa. Dec. 7, 2005) ("While a pro se litigant is given some latitude with the respect to his pleadings, a pro se plaintiff is not excused from complying with rules of procedural and substantive law."); *Faretta v. California*, 422 U.S. 806, 834 n.46 (1975) (explaining that criminal defendants have a right to represent themselves, although that right does not excuse them from obeying procedural and substantive legal rules).

IV. **Discussion**

    A. **Plaintiff cannot establish state action that would give rise to liability under federal civil rights law.**

A plaintiff pursuing a claim based on 42 U.S.C. § 1983 must allege that the defendant acted "under color of law." *Rendell-Baker v. Kohn*, 457 U.S. 830, 837–38 (1982). The Third Circuit explained this requirement means that "a plaintiff seeking to hold an individual liable under § 1983 must establish that she was deprived of a federal constitutional or statutory right by a state actor." *Kach v. Hose*, 589 F.3d 626, 646 (3d Cir. 2009). The Third Circuit has identified "three discrete tests to determine whether there has been state action." *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1142 (3d Cir. 1995). First, the court considers "whether 'the private entity has exercised powers that are traditionally the *exclusive* prerogative of the state' " *Id.* (citing *Blum v. Yaretsky*, 457 U.S. 991, 1004–05 (1982)). Second, the court examines "whether 'the private party has acted with the help of or in concert with state officials.' " *Id.* (citing *McKeesport Hosp. v. Accreditation Council for Grad. Med. Ed.*, 24 F.3d 519, 525 (3d Cir. 1994)). The third line of inquiry along which a court may find state action involves asking whether " '[t]he State has so far insinuated itself into a position of interdependence with … [the acting party] that it must be recognized as a joint participant in the challenged activity.' " *Id.* (citing *Krynicky v. Univ. of Pittsburgh*, 742 F.2d 94, 98 (3d Cir. 1984)).

Plaintiff in this case has not successfully alleged that Lafayette College or the individual defendants are "state actors" as the Supreme Court and the Third Circuit have defined that term. In Plaintiff's opposition to Defendants' Motion to Dismiss, Plaintiff offers several facts in support of her argument that Lafayette College is a state actor. Plaintiff alleges that Lafayette College was created by act of the legislature, is a state-created corporation, and received its

4

charter from the State Government.  Plaintiff also alleges that Lafayette College's public safety officers had an obligation to serve the public, and therefore should be considered public officials.

In general, courts may not consider facts alleged in an opposition to a motion to dismiss rather than in the complaint itself.  *Pennsylvania ex rel. Zimmerman v. Pepsico, Inc.*, 836 F.2d 173, 181 (3d Cir. 1988) ("It is axiomatic the complaint may not be amended by the briefs in opposition to a motion to dismiss."); James Wm. 2 Moore et al., Moore's Federal Practice ¶ 12.34[2] (3d ed. 2014) ("The court may not, for example, take into account additional facts asserted in a memorandum opposing the motion to dismiss, because such memoranda do not constitute pleadings under Rule 7(a).").

However, even if I were to consider the facts alleged in Plaintiff's response to the motion to dismiss, I would find Plaintiff has not alleged state action.  Lafayette College certainly does not exercise powers that are the exclusive prerogative of the state.  *Becker v. City Univ. of Seattle*, 723 F. Supp. 2d 807, 812 (E.D. Pa. 2010) (higher education has not been considered a state function).  Nor has Plaintiff alleged facts showing that Lafayette College's public safety officers were engaged in a traditional government function when Mr. Mast's heart attack occurred.  Courts have held that private university public safety officers may act under color of state law when exercising police powers such as making arrests.  *See Henderson v. Fisher,* 631 F.2d 1115, 1118 (3d Cir. 1980) (finding campus police at the University of Pittsburgh acted under color of state law because the University was part of the state's public system and campus police had arrested plaintiff); *Dempsey v. Bucknell Univ.*, 2012 WL 1569826 at *5–6 (M.D. Pa. May 3, 2012) (campus police at a private institution acted under color of state law when they arrested the plaintiff).  In contrast to those cases, Plaintiff here does not allege public safety officers arrested anyone.  Plaintiff only alleges public safety officers did not respond to a medical

5

emergency call quickly enough. I have found no authority suggesting that responding to a medical emergency call is an exclusively governmental function.

As to the second test for state action, there are no allegations that Defendants acted in concert with state officials.

As to the third test, which inquires whether the state and private entities have become interdependent, Plaintiff has not alleged facts sufficient to find interdependence. The Third Circuit has found Temple and the University of Pittsburgh to be interdependent with the Commonwealth of Pennsylvania because of financial subsidies, the high degree of control Pennsylvania has exerted over these institutions, and their place in the state's public system of higher education. *Krynicky*, 742 F.2d at 102–03. The facts that Plaintiff alleges in her response—Lafayette College was chartered by the state and is a corporation under state laws—do not rise to that level of interdependence. *See Imeriale v. Hahnemann Univ.*, 776 F.Supp. 189, 198 (E.D. Pa. 1991) (finding Hahnemann University was not a state actor).

Because Plaintiff has not alleged Defendants acted under color of state law, Plaintiff's claim under 42 U.S.C. § 1983 must be dismissed.

### B. Plaintiff's Complaint fails to allege constitutional deprivations, but instead alleges negligence, which is not actionable under Section 1983.

Even if Lafayette were a state actor, Plaintiff has failed to state a claim because the essence of her claim, that the College was negligent in its response to her husband's emergency, does not amount to a deprivation of civil rights. The defense is correct that such claims were barred by the Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), where it held that Section 1983 provides no remedy if the case rests upon a "negligent act of an official causing unintended loss of or injury to life." The Court there concluded that the Fourteenth Amendment

emergency call quickly enough. I have found no authority suggesting that responding to a medical emergency call is an exclusively governmental function.

As to the second test for state action, there are no allegations that Defendants acted in concert with state officials.

As to the third test, which inquires whether the state and private entities have become interdependent, Plaintiff has not alleged facts sufficient to find interdependence. The Third Circuit has found Temple and the University of Pittsburgh to be interdependent with the Commonwealth of Pennsylvania because of financial subsidies, the high degree of control Pennsylvania has exerted over these institutions, and their place in the state's public system of higher education. *Krynicky*, 742 F.2d at 102–03. The facts that Plaintiff alleges in her response—Lafayette College was chartered by the state and is a corporation under state laws—do not rise to that level of interdependence. *See Imeriale v. Hahnemann Univ.*, 776 F.Supp. 189, 198 (E.D. Pa. 1991) (finding Hahnemann University was not a state actor).

Because Plaintiff has not alleged Defendants acted under color of state law, Plaintiff's claim under 42 U.S.C. § 1983 must be dismissed.

### B. Plaintiff's Complaint fails to allege constitutional deprivations, but instead alleges negligence, which is not actionable under Section 1983.

Even if Lafayette were a state actor, Plaintiff has failed to state a claim because the essence of her claim, that the College was negligent in its response to her husband's emergency, does not amount to a deprivation of civil rights. The defense is correct that such claims were barred by the Supreme Court in *Daniels v. Williams*, 474 U.S. 327, 328 (1986), where it held that Section 1983 provides no remedy if the case rests upon a "negligent act of an official causing unintended loss of or injury to life." The Court there concluded that the Fourteenth Amendment

exists to prevent the arbitrary **use** of government power, and that common law duties do not become "constitutionalized" merely because a defendant is also a state actor.  *Id.* at 335.

This case does not fall within the parameters of the "state created danger" doctrine, which requires both a special relationship between the plaintiff and the governmental defendant, such as custody, and specific action by the defendant making the plaintiff more vulnerable to a specific and foreseeable risk of injury.  *Bright v. Westmoreland County,* 443 F.3d 276 (3d Cir. 2006).  In *Bright*, the Third Circuit made clear that "it is misuse of state authority, rather than a failure to use it," that will give rise to a constitutional violation and that governmental failure to protect against an outside risk will not support a claim.  *Id.* at 282, 284.

Here, Mrs. Mast alleges that Lafayette Public Safety Officers, when they became aware her husband was stricken, should have directly responded and brought a defibrillator from Student Health, which was far closer to the gymnasium than emergency responders dispatched by the City of Easton.[2]  Assuming that it had such a duty, and assuming that a reasonable Public Safety Office on a college campus would have such a procedure and respond accordingly, under controlling precedent such negligence would still not rise to the level of a constitutional deprivation.

        **C. Even if Plaintiff stated a claim under Section 1983, that claim, as well as any remaining state law claims, would be barred by the applicable statutes of limitations.**

The law requires that claims be filed within a specified time period after the incident that gave rise to the claim occurred, because "[j]ust determinations of fact cannot be made when, because of the passage of time, the memories of witnesses have faded or evidence is lost." *Wilson v. Garcia*, 471 U.S. 261, 271 (1985).  The enabling statute for civil rights claims,  42

---

[2] The Amended Complaint makes reference to the need for a defibrillator.  Mrs. Mast amplified this argument with the use of a map during oral argument, stressing proximity.  I overruled Defendants' objection that such material was beyond the scope of the Complaint and allowed Plaintiff to be heard.

U.S.C. § 1983, does not have an explicit statute of limitations, so in general, Section 1983 claims borrow a statute of limitations from the law of the state where the claim arose. *Kach*, 589 F.3d at 640. In Pennsylvania, the statute of limitations for a Section 1983 claim is therefore usually two years. *Id.* at 634. Any state law claims that Plaintiff may be alleging under this Court's supplemental jurisdiction, specifically wrongful death, would also be subject to a two- year statute of limitations. 42 Pa. C.S.A. § 5524(2).

The statute of limitations begins to run when the claim accrues. "As a general matter, a cause of action accrues at the time of the last event necessary to complete the tort, usually at the time the plaintiff suffers an injury." *Kach*, 589 F.3d at 634. The injury that has given rise to Plaintiff's claim here occurred eighteen years before she filed suit. The statute of limitations has long since passed, unless Plaintiff can show an exception applies.

There are circumstances that can extend the time period for filing a suit. In appropriate cases, the "discovery rule" can toll the statute of limitations until a plaintiff discovers that she has a claim.[3] *Miller v. Philadelphia Geriatric Center*, 463 F.3d 266, 275 (3d Cir. 2006). In *Miller,* the Third Circuit summarized the test as follows:

> Under the Pennsylvania discovery rule, the statute of limitations begins to run when the complaining party "knows, or reasonably should know (1) that he has been injured, and (2) that his injury has been caused by another party's conduct." *Bohus v. Beloff,* 950 F.2d 919, 924 (3d Cir.1991). A plaintiff need not know the exact medical cause of the injury, that his injury is due to another's negligent conduct or that he has a cause of action. *Id.* at 925. The "polestar" of the

---

[3] The defense is correct that Pennsylvania does not follow the discovery rule in wrongful death cases. *Pastierkik v. Duquesne Light Co.*, 514 Pa. 517, 521–22, 526 A.2d 323, 325–26 (1987). I find its refusal to do so inconsistent with the equitable rationale for adopting the rule in non-death cases. Where state tolling principles contradict federal law or policy, federal tolling principles may apply in certain limited circumstances. *Lake,* 232 F.3d 360, 370 (3d Cir. 2000); *see also Bd. of Regents v. Tomanio,* 446 U.S. 478, 485 (1980) (explaining that "federal courts [may] ... disregard an otherwise applicable state rule of law only if the state law is inconsistent with the Constitution and laws of the United States"; *Kach*, 589 F.3d at 639. Whether this facet of Pennsylvania's statute of limitations doctrine applies to Section 1983 claims arising out of an allegedly wrongful death is not obvious. For purposes of Plaintiff's Section 1983 claim, I will assume the discovery rule applies.

8

>discovery rule is not the plaintiff's actual knowledge, but rather "whether the knowledge was known, or through the exercise of diligence, knowable to [the] plaintiff." *Id.* (citing *O'Brien v. Eli Lilly & Co.*, 668 F.2d 704, 711 (3d Cir.1981)); *see also Vitalo v. Cabot Corp.*, 399 F.3d 536, 545 (3d Cir.2005) (reiterating that plaintiffs must exercise reasonable diligence to invoke the "safe harbor" of the discovery rule).

*Id.* at 276.

Here, Plaintiff knew the essential facts necessary to bring the claim she now asserts in 1994: her husband had a cardiac episode; he was not attended by any Public Safety Officer, but instead attended by her son and a Lafayette Coach; and no defibrillator was available on scene until emergency personnel from Easton arrived. Although she alleges that she was not aware of the exact mechanism of her husband's death until a doctor disputed the Coroner's Report many years later, that knowledge would only be relevant to her ability to prove causation, and it would not affect her ability to investigate the adequacy of Lafayette's response.

A separate basis for tolling the statute of limitations is fraudulent concealments, where a defendant actively misleads the plaintiff about the existence of a claim. *Kach*, 589 F.3d at 633; *Krapf v. St. Luke's Hosp.*, 4 A.3d 642, 649–50 (Pa. Super. Ct. 2010). In wrongful death cases, Pennsylvania does permit fraudulent concealment to toll the statute of limitations. *Fine v. Checcio*, 582 Pa. 253, 270–272, 870 A.2d 850, 860–61 (2005). Mrs. Mast further contends that her counsel had a conflict of interest that prevented her from pursuing all her available legal remedies. Specifically, she alleges in her complaint that she was offered *pro bono* legal services from a law firm that she recently learned was providing legal counsel to Lafayette College for many years, and she assumes that the firm's failure to recommend litigation was intended to protect the College from liability. Such an allegation, even if it could be proven,[4] does not

---

[4] This memorandum sets forth the reasons why there is no federal civil rights claim arising out of Mr. Mast's death. I note that as a matter of Pennsylvania common law, Mr. Mast appears to have been a social guest on campus, or "licensee," to whom the duty of a landowner is limited. *See T.A. v. Allen*, 669 A.2d 360 (Pa. Super. Ct. 1995).

9

overcome Plaintiff's problems with the statute of limitations, because the alleged concealment did not originate with the Defendants.

Therefore, as an alternative basis for dismissal, Plaintiff's federal and state claims were not timely filed.

### V.     Conclusion

As stated at the outset, Mrs. Mast's grief is palpable, both in her written submissions and in her oral presentation.  However, as she herself acknowledged during the hearing on this Motion, she does not stand before the Court with a claim of sympathy, but rather to assert whatever claims are cognizable at law.  As one charged with the responsibility to apply the law, I must rule against her, and Defendants' motion will be granted.  An appropriate order follows.

    /s/ Gerald Austin McHugh
United States District Court Judge